UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DANIEL REALE,
    *Plaintiff*,

v.

PROVIDENCE AND WORCESTER
RAILROAD COMPANY,
    *Defendant*.

No. 3:23-cv-00990 (JAM)

# ORDER OF REMAND TO STATE COURT

The plaintiff does not like to wait for more than a few minutes when freight trains block a railroad crossing near his home. So he sued the railroad in state court, primarily relying on a state law that prohibits railroads from obstructing traffic for more than five minutes.

The railroad removed the action to this Court on the ground of federal diversity jurisdiction. But diversity jurisdiction requires, among other things, an amount in controversy of at least $75,000. The railroad has not proved that much is in controversy. I will therefore remand this action to state court.

## BACKGROUND

Plaintiff Daniel Reale used to live in Plainfield, Connecticut.[1] He lived in a rental apartment near a railroad crossing on Railroad Avenue. He used Railroad Avenue on a daily basis to access the street where he lived.[2]

The defendant Providence & Worcester Railroad Company ("P&W") is a freight train company that operates a switching station on Railroad Avenue.[3] On two dates in April and May

---

[1] Doc. #1-1 at 10 (¶ 1).
[2] *Ibid.*
[3] *Ibid.* (¶ 2).

1

2023, there were P&W trains that blocked Reale from using Railroad Avenue for more than 15 minutes.[4]

According to the amended complaint, P&W "as a matter of habit, policy and course, routinely negligently, intentionally and recklessly blocks traffic not only on Railroad Avenue" but also at other locations and "in doing so, routinely and on a daily or at least every other day basis, causes traffic to be delayed well in excess of five minutes and many times in excess of a half hour to fifty minutes."[5]

Reale no longer lived in Plainfield when he filed this action, having moved several miles away to Jewett City.[6] Nevertheless, he claims that his "leisure and business activities will still take him to the railroad crossing near where he used to live, and which the Defendant continues to obstruct and intends to continue obstructing absent injunctive relief."[7]

The amended complaint alleges many additional facts about harm caused by P&W to third parties. According to the complaint, P&W "causes many dozens of cars to idle, and waste fuel," and P&W "ha[s] also obstructed police cruisers, fire trucks and ambulances."[8] In addition, P&W "has failed to install a gate at its Lillibridge Road crossing, which has led to a fatality and another near fatality."[9] Likewise, P&W "fails to maintain working safety equipment" at the Railroad Avenue crossing so that "gates clos[e] when no train is approaching at all and also… the gate fail[s] to actualize with a train present, requiring Plainfield Police Department to deploy flares."[10] All in all, P&W "poses… a direct safety risk to [Reale's] former neighborhood and it

---

[4] *Ibid.* (¶ 3).
[5] *Id.* at 11 (¶¶ 5-6).
[6] *Id.* at 2. I take judicial notice that Jewett City is about six miles southwest of Plainfield.
[7] *Id.* at 13 (¶ 17).
[8] *Id.* at 11 (¶¶ 7-8).
[9] *Ibid.* (¶ 10).
[10] *Id.* at 12 (¶ 11).

imposes tens of thousands of dollars in direct economic costs shouldered by the residents of Plainfield that have remained uncompensated."[11]

The complaint asserts the following five counts. Count One alleges two violations of a state law—Conn. Gen. Stat. § 13b-339—that prohibits railroads from blocking traffic at railroad crossings for more than five minutes.[12] Count Two alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110g *et seq.*[13] Count Three alleges tortious interference with Reale's residential rental contract, claiming that P&W's actions were a "contributing factor" to Reale's move out of town.[14] Counts Four and Five allege claims for negligent and intentional infliction of emotional distress.[15]

The complaint seeks relief including damages, costs, punitive damages, and an injunction to require that P&W cease obstructing traffic for more than five minutes and that it fix its equipment at Railroad Avenue and Lillibridge Road to ensure it is in good operational working order.[16] The complaint, however, does not include a specific prayer for damages other than attaching as required by state court practice a "Statement of Amount in Demand" asserting that Reale "seeks in excess of $15,000, exclusive of other relief."[17]

After Reale filed this action in state court, P&W removed it to federal court on the ground of federal diversity jurisdiction. It then filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[18] Prior to hearing oral argument on the motion to dismiss, I

---

[11] *Ibid.* (¶ 13).
[12] *Id.* at 10. The complaint miscites the statute as "CGS § 13-389" but it is clear that the reference is to Conn. Gen. Stat. § 13b-339.
[13] *Id.* at 11-13.
[14] *Id.* at 13-14.
[15] *Id.* at 14-15.
[16] *Id.* at 13.
[17] *Id.* at 16; *see also* Conn. Gen. Stat. § 52-91 (requiring state court complaints to state whether the amount sought is more than $15,000).
[18] Docs. #1, #11.

raised a concern with the parties that I lacked jurisdiction to hear the case, because it did not appear that the amount in controversy was more than $75,000 as is required for federal diversity jurisdiction.[19]

The parties have since filed supplemental briefing on the jurisdictional issue.[20] P&W argues that the amount in controversy is more than $75,000. Reale denies seeking more than $75,000 but argues that there are federal law issues that warrant the exercise of federal question jurisdiction.

## DISCUSSION

Congress allows a defendant who has been sued in state court to "remove" the case to federal court if a federal court would otherwise have original jurisdiction over the action. *See* 28 U.S.C. § 1441.[21] State court defendants from outside the State where the lawsuit has been filed commonly remove cases on the ground of federal diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Federal diversity jurisdiction requires in part that there be an amount in controversy of more than $75,000. *Ibid.*

Even if the parties themselves do not raise a challenge to the removal of an action to federal court, the court itself has an independent duty to ensure that federal jurisdiction exists. *See Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 616-17 (2d Cir. 2019). Federal courts must construe the removal statute narrowly, resolving any doubts against removability out of regard for the rightful independence of state governments and the authority of state courts to adjudicate disputes that plaintiffs have chosen to file in state court in the first place. *See State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 132 (2d Cir. 2023).

---

[19] Doc. #41.
[20] Doc. #47.
[21] For ease of readability and the avoidance of citational clutter, this ruling omits internal quotation marks, alterations, nested citations, and footnotes in text quoted from court decisions unless otherwise indicated.

Where, as here, a state court complaint does not expressly demand more than $75,000 and the plaintiff contests or the court questions the amount in controversy, the defendant who seeks to remove a case on the ground of federal diversity jurisdiction bears the burden of proving the requisite amount in controversy by a preponderance of the evidence. *See* 28 U.S.C. § 1446(c)(2); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *Price v. PetSmart, Inc.*, 148 F. Supp. 3d 198, 200-01 (D. Conn. 2015).

Although P&W's briefing acknowledges the preponderance standard, it tries to water it down by referencing lower standards of proof articulated by the Second Circuit in *Scherer v. Equitable Life Assur. Soc. of U.S.*, 347 F.3d 394 (2d Cir. 2003).[22] The court in *Scherer* applied a standard of whether there was a "reasonable probability" that the claim was in excess of $75,000. *Id.* at 397. A reasonable probability standard is less demanding than a preponderance standard. *See Williams v. Taylor*, 529 U.S. 362, 406 (2000).

But in 2011, years after *Scherer* was decided, Congress amended the federal removal statute to set forth the preponderance standard. *See Dart Cherokee Basin Operating Co.*, 574 U.S. at 88. As a result, *Scherer*'s application of a reasonable probability standard no longer controls in a diversity removal case like this one. *See* 14C Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 3725.1 (4th ed. 2009 & Supp. 2023) (explaining how the 2011 statutory amendment displaced varying court-made standards); *Luce v. Kohl's Dept. Stores, Inc.*, 23 F. Supp. 3d 82, 85 n.3 (D. Conn. 2014) (noting displacement of *Scherer*'s judge-made reasonable probability standard by the statutory preponderance standard).[23]

---

[22] Doc. #48 at 2-3.
[23] The "reasonable probability" standard still governs in contexts other than diversity-based removal actions. *See, e.g., Smulley v. Safeco Ins. Co. of Illinois*, 2022 WL 16753118, at *1 (2d Cir. 2022) (applying "reasonable probability" standard in the context of a diversity complaint filed in a federal court in the first instance).

P&W makes matters worse by relying on a part of *Scherer* that says that the standard is even lower if the face of the complaint demands more than $75,000; in such cases, there arises a presumption that the alleged amount in controversy is the actual amount in controversy, and this presumption may be overcome only if the opposing party shows to a "legal certainty" that the claimed amount in controversy does not exceed $75,000. *See Scherer*, 347 F.3d at 397. But, as *Scherer* itself makes clear, this presumption and burden-shifting applies only if the face of the complaint seeks more than $75,000. *Ibid*. Here, the face of Reale's complaint does not seek more than $75,000. So Reale is under no obligation to prove to a legal certainty that his claim is for less than $75,000.

Therefore, I apply the preponderance standard. That means P&W must prove not simply that it is possible or reasonably probable that Reale could recover more than $75,000, but that it is more likely than not that the amount in controversy is more than $75,000.

There is one more preliminary matter concerning what allegations "count" and what allegations do not "count" for purposes of deciding the amount in controversy. When assessing whether a jurisdictional amount in controversy threshold has been met, a court must disregard the value of any potential recovery or relief for injuries that the plaintiff has no constitutional standing to assert. *See, e.g.*, *Doody v. Bank of Am., N.A.*, --- F. Supp. 3d ---, 2024 WL 20706, at *7 (D. Conn. 2024); *Benton v. CVS Pharmacy, Inc.*, 604 F. Supp. 3d 889, 893 (N.D. Cal. 2022).

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. To establish Article III standing, a plaintiff must show (1) that the plaintiff has suffered an injury in fact which is concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) that there is a sufficient causal connection between the injury and the conduct complained of; and (3) that there is a likelihood

the injury will be redressed by a favorable decision. *See Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023).

Because a plaintiff must show that he personally has suffered a concrete and particularized injury, he cannot rely instead on injuries to third parties. "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991); *In re Bernard L. Madoff Inv. Sec. LLC.,* 721 F.3d 54, 58 (2d Cir. 2013) (same).

So in assessing whether the facts of Reale's complaint more likely than not establish an amount in controversy more than $75,000, I count only the allegations that suggest a concrete, particularized, and actual or imminent injury to Reale himself. By contrast, I disregard Reale's numerous allegations about injuries to third parties, such as other drivers, emergency responders, tort victims of railroad crossing accidents, and the citizenry of Plainfield in general. None of these other injured people are parties to this action.

The only allegations for which Reale has standing involve the delay he has previously experienced and imminently expects to experience again at railroad crossings in Plainfield. As to past delays, Reale specifically alleges only two delays in 2023. The fact that Reale sat in traffic two times in 2023 for more than 15 minutes does not suggest anything more than nominal damages. But even if he were delayed dozens of times before, there is nothing to suggest that the harm to him was more than a few hundred or a few thousand dollars—nowhere close to $75,000. Indeed, the state anti-blocking statute he cites as grounds for Count One of the complaint fixes damages only in the amount of $25 for each time a railroad obstructs traffic for more than five minutes. *See* Conn. Gen. Stat. § 13b-339.

True enough, Reale also alleges that the past delays were a "contributing factor" to his decision to move out of Plainfield. But the complaint does not attempt to quantify any economic or emotional injury from having to move to a new apartment. It is hard to imagine that the costs of moving could be more than a few thousand dollars at most. And there are no facts alleged to suggest that the move was traumatic in terms of any emotional injury. Moreover, the fact that P&W's conduct was merely a "contributing factor" to Reale's decision to move suggests that other reasons primarily drove that choice, and that any resulting damages are accordingly not attributable to P&W.

In sum, to the extent that the complaint seeks money damages for past injuries, it is clear that the complaint falls far short of alleging that more than $75,000 is at stake. But the complaint also seeks injunctive relief, and a prayer for injunctive relief may count toward the amount-in-controversy requirement as well. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). In this injunctive relief context, "'the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested.'" *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (quoting *Kheel v. Port of New York Auth.*, 457 F.2d 46, 49 (2d Cir. 1972)).[24]

---

[24] P&W's notice of removal invoked the costs that it would incur to comply with an injunction as grounds to conclude that this case meets the $75,000 amount in controversy requirement. Doc. #1 at 3 (¶ 11). But P&W has abandoned this argument in light of the plaintiff-focused Second Circuit test. P&W's notice of removal also claimed that Reale's "pre-suit communications stated that the amount in controversy exceeds $75,000, exclusive of interest and costs." *Ibid.* But P&W has not produced such evidence.

8

As the basis for a grant of injunctive relief, the complaint alleges without elaboration that Reale's "leisure and business activities will still take him to the railroad crossing near where he used to live, and which the Defendant continues to obstruct and intends to continue obstructing absent injunctive relief."[25] But because the complaint does not say how often that will be, it would be speculative to attempt to quantify how often Reale will be delayed again in the future. As the Second Circuit has observed, "the jurisdictional test is applicable to that amount that flows directly and with a fair degree of probability from the litigation, not from collateral or speculative sources." *Kheel*, 457 F.2d at 49 (rejecting as "too indirect and speculative" a plaintiff's argument that failure to institute mass transit improvements would impose future costs of taxicab rides for nine years that would meet the amount-in-controversy requirement). In the absence of any additional allegations in the complaint, I decline to speculate how many times Reale could reasonably expect to be delayed at train crossings in Plainfield in the future, much less to speculate about the number of delays he would need to suffer before experiencing the time-and-frustration equivalent of $75,000 in damages.

P&W points out that the complaint also seeks injunctive relief to require P&W to fix its safety equipment at Lillibridge Road and Railroad Avenue. It maintains that the value of this injunction to Reale is no less than saving him from death or serious injury—far more than $75,000.[26] But the complaint has no allegations that these safety issues actually or imminently endanger Reale rather than other members of the traveling public who are unaware of these allegedly defective conditions. In order to have standing to seek injunctive relief, a plaintiff must "show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged [defendant's] conduct and the injury or threat of injury must be both real

---

[25] Doc. #1-1 at 13 (¶ 17).
[26] Doc. #48 at 5-6.

and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Indeed, the complaint does not even allege that Reale will be using the Lillibridge crossing in the future. And it alleges in only the most conclusory of terms that he will again continue to use the Railroad Avenue crossing. The allegations of any future physical harm to Reale at the Lillibridge or Railroad Avenue crossings are too speculative to support a conclusion by a preponderance of the evidence that the amount in controversy is more than $75,000.

Moreover, P&W's position would open the floodgates for local disputes and generalized grievances to make their way into federal court. Any out-of-state plaintiff with travel plans could complain that a town or city has not fixed a pothole or a crack in the sidewalk and that the defective condition endangers life or limb. She could then invoke diversity jurisdiction to haul the town or city into a federal court to litigate local road and sidewalk issues.

In light of these obstacles, it is not surprising that Reale does not suggest that the amount in controversy is more than $75,000. To the contrary, Reale insists that "[n]o creativity with the law will result in any multiplier of facts possibly resulting in my recovery of $75,000."[27]

P&W also argues that Reale could recover substantial damages for his CUTPA claim. But as to any award of compensatory damages for a CUTPA violation, P&W does not explain how a reasonable jury could award anything more than a few thousand dollars at most to compensate Reale for the extra time he has sat in traffic waiting for trains to go by.

---

[27] Doc. #49 at 1. I am mindful that, in order to protect the rights of *pro se* plaintiffs who are unlearned in the law, a court should ordinarily afford a liberal interpretation to the allegations of a *pro se* complaint. But where—as here—a *pro se* plaintiff argues for a *restrictive* interpretation of the terms of his complaint so that it is not construed to seek more than $75,000 in damages, it is not clear that the complaint should be read expansively to defeat the interests of the plaintiff. In any event, the result would be the same in this case regardless of whether I apply the rule of liberal construction to the allegations of the complaint.

Although CUTPA also allows for an award of punitive damages, "'in computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny than a claim for actual damages.'" *Peoples Club of Nigeria Int'l., Inc. v. Peoples Club of Nigeria Int'l. - New York Branch, Inc*., 821 F. App'x 32, 35 (2d Cir. 2020) (quoting *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972)). And a closer look at Reale's CUTPA claim reveals that he has a negligible chance of recovering any punitive damages.

CUTPA allows for liability only if a defendant has engaged in unfair or deceptive business practices. *See Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 338 Conn. 189, 212 (2021). Because the complaint alleges no facts to suggest that P&W has engaged in any deceptive practices, any CUTPA claim will rise or fall on the ground that P&W has engaged in an unfair practice that "offends public policy" as "established by statutes, the common law or otherwise." *Id.* at 232. To that end, Reale claims that P&W has repeatedly violated Connecticut's anti-blocking statute—Conn. Gen. Stat. § 13b-339—that prohibits railroads from obstructing intersections for more than five minutes.

Even assuming that Reale could prevail on this CUTPA theory of liability, there is no realistic prospect that a jury would award punitive damages. Under CUTPA, punitive damages are available only if a defendant is intentionally, wantonly, or recklessly indifferent to the rights of others. *See Ulbrich v. Groth*, 310 Conn. 375, 446 (2013). Yet P&W would be free to argue that any violation of state law was not done intentionally, wantonly, or recklessly because it believed in good faith—and as many courts have ruled when considering similar railroad anti-blocking statutes—that the Connecticut statute was preempted by federal law. *See, e.g.*, *BNSF Ry. Co. v. Hiett*, 22 F.4th 1190, 1194 (10th Cir. 2022); *Friberg v. Kansas City S. Ry. Co.*, 267

F.3d 439, 441 n.2, 443-44 (5th Cir. 2001); *State v. CSX Transportation, Inc.*, 168 Ohio St. 3d 543, 544, 548 (2023); *State v. Norfolk S. Ry. Co.*, 107 N.E.3d 468, 477 (Ind. 2018).[28]

That leaves the potential for punitive damages for Reale's common law claims for tortious interference and emotional distress. But the longstanding rule in Connecticut is that punitive damages for common law torts are limited to litigation expenses, such as attorney's fees less taxable costs. *See Hylton v. Gunter*, 313 Conn. 472, 484 (2014). Because Reale is proceeding *pro se*, he will have no attorney fees, and his litigation expenses could not reasonably exceed more than a few thousand dollars at the most.

All in all, I conclude that P&W has not carried its burden to prove by a preponderance of the evidence that the amount in controversy is more than $75,000. That would otherwise be the end of the matter, except Reale insists that there is federal question jurisdiction under 28 U.S.C. § 1331. In support of this argument, he points to P&W's federal law preemption defense and his counter-defense that preemption is precluded by the Ninth Amendment to the U.S. Constitution.[29]

But for removal cases, the Supreme Court has "long held that the presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's

---

[28] I realize that P&W's preemption defense might well foreclose some of Reale's claims on the merits, as P&W has argued in its motion to dismiss. But in evaluating whether the amount-in-controversy requirement is met, a court's task is not to consider the merits of potential claims and defenses. *See Scherer*, 347 F.3d at 397-98; *see also Zacharia v. Harbor Island Spa, Inc*., 684 F.2d 199, 202 (2d Cir. 1982) (noting the general rule that the "jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits" and that "even where those allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted"). For that reason, this ruling assumes the merits of all the claims alleged by Reale for which he has jurisdictional standing and, on the basis of that assumption, evaluates whether a preponderance of evidence shows that the amount in controversy is more than $75,000. To the extent I have considered the preemption issue above, it is solely pursuant to my authority to engage in closer scrutiny of Reale's claims for punitive damages as a component of the amount in controversy.

[29] Doc. #49 at 1; Doc. #51 at 1.

properly pleaded complaint." *Rivet v. Regions Bank of Louisiana.*, 522 U.S. 470, 475 (1998). Under the well-pleaded complaint rule, the focus is on what claims the plaintiff alleges in the complaint, and the fact that a defendant may raise federal law defenses or counterclaims does not allow the defendant to remove the case to a federal court. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987). Thus, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393. There are narrow exceptions to the well-pleaded complaint rule, *see State by Tong*, 83 F.4th at 132-142, but none are implicated here. Therefore, I conclude that there is no federal question jurisdiction over this action.

## CONCLUSION

For the reasons set forth above, the Court REMANDS this action to the Connecticut Superior Court for the Judicial District of Windham in accordance with D. Conn. L. Civ. R. 83.7.

It is so ordered.

Dated at New Haven this 28th day of March 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge